IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KIMBERLY BEEMER and ROBERT MUISE,<br>Plaintiffs,<br><br>v.<br><br>GRETCHEN WHITMER, in her official capacity as Governor for the State of Michigan, DANA NESSEL, in her official capacity as Attorney General of the State of Michigan, and BRIAN L. MACKIE, in his official capacity as Washtenaw County Prosecuting Attorney,<br>Defendants. | No. 1:20-cv-00323<br><br>**FIRST AMENDED COMPLAINT**<br><br>Hon. Paul L. Maloney<br><br>U.S. Magistrate Judge Phillip J. Green |

Plaintiffs Kimberly Beemer and Robert Muise (collectively referred to as "Plaintiffs"), by and through undersigned counsel, bring this First Amended Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

**INTRODUCTION**

1.      John Adams warned: "But a Constitution of Government once changed from Freedom, can never be restored.  Liberty once lost is lost forever."  Plaintiffs bring this action because they reasonably fear that the draconian encroachments on their freedom set forth in this First Amended Complaint will, unfortunately, become the "new norm."  It has been said that all tyranny needs to gain a foothold is for people of good conscience to remain silent.

2.      This case seeks to protect and vindicate fundamental liberties that citizens of the United States enjoy free from government interference.  These liberties are not conferred or granted by government to then be rescinded at the will and whims of government officials.  These God-given liberties are possessed by the people, and they are guaranteed against

government interference by the United States Constitution, which is the supreme law of the land, and by the Constitution of the State of Michigan.

3.      This civil rights action is brought under the First, Second, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Article I, § 6 of the Michigan Constitution, challenging Defendant Whitmer's authority to restrict fundamental liberties via the issuance of her executive orders which have criminalized Plaintiffs' peaceful activity and thus deprived Plaintiffs of their fundamental liberties and freedom.

4.      Plaintiffs seek a declaration that the enactment and enforcement of the challenged measures ordered by Defendant Whitmer as set forth in this First Amended Complaint violate their fundamental liberties and rights secured by the United States and Michigan Constitutions and an order enjoining the same.  Plaintiffs also seek an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and other applicable laws.

## JURISDICTION AND VENUE

5.      This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over the State law claim pursuant to 28 U.S.C. § 1367(a).

6.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by *Ex parte Young*, 209 U.S. 123 (1908), and by the general legal and equitable powers of this Court.

7.      Plaintiffs' claim for an award of their reasonable costs of litigation, including attorneys' fees and expenses, is authorized by 42 U.S.C. § 1988 and other applicable law.

8.      Venue is proper under 28 U.S.C. § 1391(b) because the Office of the Governor of Michigan and the Office of the Michigan Attorney General are located in this judicial district and all Defendants are residents of the State in which this district is located.

## PARTIES

9.      Plaintiffs Kimberly Beemer and Robert Muise are adult citizens of the United States and residents of Michigan.

10.     Plaintiff Beemer owns a cottage in Charlevoix County, Michigan.

11.     Plaintiff Beemer, a Michigan licensed attorney, resides in Saginaw, Michigan. Plaintiff Muise, a Michigan licensed attorney, resides in Superior Township, Michigan, which is in Washtenaw County.

12.     Defendant Gretchen Whitmer is the Governor of the State of Michigan.

13.     Under color of State law, Defendant Whitmer issued Executive Order 2020-21 (EO 2020-21), Executive Order 2020-42 (EO 2020-42), and Executive Order 2020-59 (EO 2020-59).  Defendant Whitmer will continue to issue executive orders in light of the current COVID-19 pandemic and the anticipated recurrence of the spread of this virus and other viruses.

14.     Defendant Whitmer is sued in her official capacity only.

15.     Defendant Dana Nessel is the Attorney General of Michigan.  The Attorney General is the State's top law enforcement official.

16.     As the Attorney General, Defendant Nessel has authority to investigate and enforce violations of the provisions of Defendant Whitmer's executive orders set forth in this First Amended Complaint.

17.     As the Attorney General, Defendant Nessel is actively involved with investigating and enforcing violations of Defendant Whitmer's executive orders and has issued cease and

desist letters to individuals and businesses that have violated these orders, threatening criminal sanctions if the individuals or businesses fail to comply.

18.    Defendant Nessel is sued in her official capacity only.

19.    Defendant Brian L. Mackie is the Washtenaw County Prosecuting Attorney.  As a County Prosecuting Attorney, Defendant Mackie is responsible for criminally prosecuting persons who violate Defendant Whitmer's executive orders in Washtenaw County.

20.    Defendant Mackie is sued in his official capacity only.

## STATEMENT OF FACTS

21.    On March 23, 2020, Defendant Whitmer issued EO 2020-21, which was described as a "[t]emporary requirement to suspend activities that are not necessary to sustain or protect life."

22.    On April 9, 2020, Defendant Whitmer issued EO 2020-42, which "reaffirm[ed] the measures set forth in Executive 2020-21, clarif[ied] them, and extend[ed] their duration to April 30, 2020."  The executive order took effect "on April 9, 2020 at 11:59 pm."  When EO 2020-42 took effect, it rescinded EO 2020-21.  A true and correct copy of EO 2020-42, which is incorporated herein by reference, is attached to this First Amended Complaint as Exhibit 1.

23.    By its own terms, EO 2020-42 was to remain in effect until April 30, 2020 at 11:59 pm.  Defendant Whitmer publicly expressed a desire to extend the measures of EO 2020-42 into June 2020.  Though EO 2020-42 was rescinded when EO 2020-59 took effect, Defendant Whitmer retains the power and inclination to institute the measures in EO 2020-42 at any time she sees fit.

24.    A "willful violation" of Defendant Whitmer's executive orders is a misdemeanor.

25.     EO 2020-42 put in place draconian measures that arbitrarily and unreasonably imposed restrictions and thus criminal sanctions on Plaintiffs' fundamental rights and liberty.

26.     EO 2020-42, stated, in relevant part, the following:

2.  Subject to the exceptions in section 7, all individuals currently living within the State of Michigan are ordered to stay at home or at their place of residence. Subject to the same exceptions, all public and private gatherings of any number of people occurring among persons not part of a single household are prohibited.

3.  All individuals who leave their home or place of residence must adhere to social distancing measures recommended by the Centers for Disease Control and Prevention, including remaining at least six feet from people from outside the individual's household to the extent feasible under the circumstances.

* * *

7.  Exceptions.

a.  Individuals may leave their home or place of residence, and travel as necessary:

1.  To engage in outdoor physical activity, consistent with remaining at least six feet from people from outside the individual's household.  Outdoor physical activity includes walking, hiking, running, cycling, kayaking, canoeing, or other similar physical activity, as well as any comparable activity for those with limited mobility.

* * *

6.  To obtain necessary services or supplies for themselves, their family or household members, their pets, and their vehicles.

A.  Individuals must secure such services or supplies via delivery to the maximum extent possible.  As needed, however, individuals may leave the home or place of residence to purchase groceries, take-out food, gasoline, needed medical supplies, and any other products necessary to maintain the safety, sanitation, and basic operation of their residences. Individuals may also leave the home to drop off a vehicle to the extent permitted under section 9(i) of this order.

- 5 -

* * *

    7.  To care for a family member or a family member's pet in another household.

* * *

b.  Individuals may leave their home or place of residence, and travel as necessary:

    1.  To return to a home or place of residence from outside the state.

    2.  To leave this state for a home or residence elsewhere.

    3.  Between two residences in this state, through April 10, 2020.  After that date, travel between two residences is not permitted.

* * *

c.  All other travel is prohibited, including all travel to vacation rentals.

(EO 2020-42 at Exhibit 1).

    27.  Plaintiff Beemer and members of her household frequently travel to her cottage, property which she owns, located in Charlevoix County.  She would often leave from her residence in Saginaw, Michigan and travel to the cottage on a Thursday, remaining at her cottage over the weekend and returning late on Sunday or early Monday morning.  Her cottage is a second home, and it is her private retreat from the daily grind of her law practice.

    28.  Under the measures set forth in EO 2020-42, if Plaintiff Beemer travelled to her cottage, she would have committed a criminal offense, subjecting her to prosecution for violating the executive order.  As a result, Plaintiff Beemer ceased her travel and was thus denied the use and enjoyment of her private property by the government while this order was in effect.  Plaintiff

Beemer had no recourse for this deprivation of her property rights other than seeking redress in a court of law by bringing this action.

29.     There is little to no chance that Plaintiff Beemer would have caused the spread of COVID-19 by travelling with members of her household from her residence in Saginaw, Michigan to her cottage in Charlevoix County.  In fact, she and members of her household are more isolated at the cottage than when they are at their home in Saginaw.

30.     EO 2020-42 permitted individuals to travel from Saginaw to Charlevoix County to purchase pet food, gasoline, marijuana, Lotto tickets, and liquor, among other reasons.

31.     There was no reasonable or legitimate justification for restricting Michigan residents from travelling to cottages that they own or rent during this current pandemic.  Under EO 2020-42, a Wisconsin or Ohio resident could have travelled from his State to his cottage in Charlevoix County, Michigan without violating EO 2020-42.  Thus, the executive order discriminated against individuals, including Plaintiff Beemer, based upon their State of residence, it impaired their right to travel, and it deprived them of the use and enjoyment of their property.

32.     Prohibiting individuals from traveling from one place of residence in the State to another place of residence or cottage within the State had no real or substantial relation to promoting the objectives of EO 2020-42, particularly in light of the exceptions permitted by the government under the executive order.

33.     Following the issuance of EO 2020-21, and reaffirmed in EO 2020-42 and EO 2020-59, Defendant Whitmer has refused to order abortion centers in Michigan to close even though abortion is an elective procedure, it is never necessary to protect the life of a mother, and it results in the death of an unborn child, which is contrary to the stated goal of the executive

orders "to sustain or protect life."  Moreover, it is impossible to practice social distancing in an abortion center due to the nature of the procedure.

34.     Defendant Whitmer also permitted marijuana businesses to remain open during this pandemic.  In fact, pursuant to an MRA Advisory Bulletin dated April 10, 2020, because Secretary of State offices are closed and "individuals may not be able to renew their driver's licenses or government-issued identification cards while the Executive Order is in effect . . , licensed provisioning centers and adult-use retailers are temporarily allowed to sell or transfer marijuana to a patient, caregiver, or customer who has an expired driver license or government-issued identification card during home delivery and curbside sales."

35.     In contrast, there is little to no chance that a landscaping business, for example, will spread COVID-19.  Yet, EO 2020-42 closed these businesses.  Landscaping businesses could easily practice social distancing measures recommended by the Centers for Disease Control and Prevention (CDC), including remaining at least six feet from people from outside the employee's household.  Landscaping is an outdoor business, which can operate without any personal contact with customers.  There is far less likelihood of a landscaping business spreading COVID-19 than other businesses that Defendant Whitmer permits under her executive orders, specifically including hardware stores, convenience stores, grocery stores, gas stations, marijuana businesses, and abortion centers.

36.     During her free time, Plaintiff Beemer enjoys boating on Lake Charlevoix.  However, EO 2020-42 prohibited this activity.  Under this executive order, Defendant Whitmer permitted kayaking and canoeing, but arbitrarily prohibited the use of boats with motors.

37.     Plaintiff Muise served as an officer on activity duty in the United States Marine Corps for thirteen years.  He was an infantry officer, he is a veteran of Operations Desert Shield

and Desert Sword, and he trained with 42 Commando, British Royal Marines.  Plaintiff Muise resigned his commission as a Major in 2000.

38.     Plaintiff Muise has a valid Michigan Concealed Pistol License.   He is professionally trained in the use of firearms, he legally owns firearms, and he is a staunch defender of the Second Amendment, which constitutionally guarantees him the right to bear arms for self-defense, defense of his family, and for the defense of a free State.  He also uses firearms to hunt in Michigan and in other States.

39.     To support his right to bear arms, which necessarily includes the right to purchase firearms and ammunition, Plaintiff Muise patronizes local gun shops, specifically including a gun shop located in Washtenaw County.

40.     EO 2020-42 ordered all nonessential businesses and activities to cease.  Though this order exempted "critical infrastructure," Defendant Whitmer purposefully referenced an outdated list of such industries (issued March 19, 2020) rather than the more current federal guidelines (issued March 28, 2020) that designated firearm and ammunition retailers as critical. This deliberate action shut down gun stores in order to deny citizens, including Plaintiff Muise, access to their Second Amendment rights and their rights protected by Article 1, § 6 of the Michigan Constitution.

41.     For reasons that can only be explained as political (Defendant Whitmer considered Lotto, marijuana, liquor, and abortion to be essential but not firearms and ammunition), in EO 2020-42, Defendant Whitmer expressly adopted outdated federal guidance regarding "critical infrastructure" and essential businesses—guidance which did not expressly include firearms, ammunition, or shooting ranges—and expressly rejected the updated federal guidance, which did include protection for the Second Amendment, and she did so with

emphasis: "This order does *not* adopt any subsequent guidance document released by this same agency."

42.     EO 2020-42 banned travel to gun stores.   However, the order permitted individuals to travel to buy food for a pet, marijuana, liquor, and Lotto tickets, among other items.

43.     Accordingly, EO 2020-42 prohibited Plaintiff Muise from traveling to gun stores to purchase firearms and ammunition and to travel to gun ranges to train with his firearms. Because he did not want to be subject to criminal or other sanctions for violating the executive order, Plaintiff Muise did not travel to any guns stores or ranges while EO 2020-42 was in effect.

44.     Due to the panic caused by the pandemic and the unemployment, loss of income, poverty, and uncertainty caused by Defendant Whitmer's executive orders, owning and possessing firearms is critically important at this time.  EO 2020-42 deprived Michigan residents, including Plaintiff Muise, of their fundamental right to use arms in defense of their "hearth and home."

45.     Plaintiff Muise and his wife have been blessed with twelve children and ten grandchildren (with two more grandchildren expected by June).  Three of his adult children are married and reside locally in homes they own in Michigan, and two of his adult children reside locally in rental properties in Michigan.  His other seven children reside at his home in Superior Township.

46.     On most Sundays, Holy Days, and other special events, the family would gather at Plaintiff Muise's home for a meal, fellowship, and prayer.  The family's faith is the center of their family life.

47.     Plaintiff Muise and his family are devout Catholics.  Because of COVID-19, there are no public Masses in the Lansing Diocese.  However, Jesus Christ taught that where two or more gather in His name, He is present.  (Matthew 18:20).  Plaintiff Muise would like his family to gather together on Sundays, other Holy Days, and special events to associate for a meal, fellowship, and prayer, and thus gather as a family in Christ's name.  Such gatherings are religious worship for Plaintiff Muise.  Under the measures expressly stated and set forth in EO 2020-42, it was a crime in Michigan to engage in such family associations and gatherings.

48.     EO 2020-42 stated that "a place of religious worship, when used for religious worship, is not subject to penalty."  There were no definitions or guidance within the executive order to explain how this exemption applied.

49.     EO 2020-59 states that "neither a place of religious worship nor its owner is subject to penalty under section 20 of this order for allowing religious worship at such place."  There are no definitions or guidance within the executive order to explain how this exemption applies.

50.     The travel restrictions imposed by EO 2020-42 were broad and severe.  The stay-at-home requirement was disturbingly close to a house arrest.

51.     In addition to criminal sanctions for violating an executive order, Plaintiffs also fear that they could jeopardize their Michigan law practices and related for-profit and non-profit business interests if they violated an executive order.  Defendant Whitmer was quoted in the news on or about April 1, 2020, as follows: "You know, just about every business in the state has some sort of license, from the state of Michigan or not, and so we've encouraged them not to play fast and loose with this order because their licenses could be in jeopardy as a result."

52.     On April 20, 2020, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction (Doc. No. 7), seeking, in relevant part, the following relief from the restrictions imposed by EO 2020-42:

- An order enjoining the enforcement of EO 2020-42's measures that prohibit individuals from travelling between their own residences and cottages within the State of Michigan, thereby permitting Plaintiff Beemer, along with members of her household, to travel to and from her residence in Saginaw, Michigan and her cottage located in Charlevoix County, Michigan;

- An order enjoining the enforcement of EO 2020-42's measures that prohibit the operation of landscaping businesses within the State of Michigan, thereby permitting landscaping businesses to operate, so long as the business and its employees practice social distancing measures recommended by the CDC, including remaining at least six feet from people from outside the employee's household;

- An order permitting individuals, specifically including Plaintiff Beemer, to engage in outdoor activities that include using boats with motors for fishing and other similar recreational purposes, consistent with remaining at least six feet from people from outside the individual's household;

- An order enjoining the enforcement of EO 2020-42 insofar as it conflicts with the March 28, 2020, U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency guidance on "critical infrastructure," which identifies "Workers supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges" as "critical infrastructure," thereby permitting gun stores and shooting ranges in Michigan to remain open and operational

subject to social distancing measures recommended by the Centers for Disease Control and Prevention and permitting individuals, including Plaintiff Muise, to travel to and from such businesses; and

•       An order enjoining the enforcement of EO 2020-42's measures that prohibit private, family gatherings at private residences, thereby permitting Plaintiff Muise to hold private gatherings for meals, fellowship, and prayer with his immediate family at his private residence located in Superior Township, Michigan.

53.     On April 24, 2020, Defendant Whitmer issued EO 2020-59.  A true and correct copy of this executive order, which is incorporated herein by reference, is attached to this First Amended Complaint as Exhibit 2.

54.     Following the issuance of EO 2020-59, Defendant Whitmer, along with the County Prosecutors for Charlevoix County, Livingston County, and Washtenaw County, entered into a court-filed stipulation and order with Plaintiffs on April 26, 2020, which provided, in relevant part, that EO 2020-59 applies and will be enforced as follows:

•       EO 2020-59 permits individuals to travel between their own residences and cottages within the State of Michigan, thereby permitting Plaintiff Beemer, along with members of her household, to travel to and from her residence in Saginaw, Michigan and her cottage located in Charlevoix County, Michigan.  This is provided by EO 2020-59, Section 7(b)(3).

•       EO 2020-59 permits the operation of landscaping businesses within the State of Michigan, subject to the mitigation measures required under Section 11 of the order, including the enhanced social-distancing rules described in section 11(h).  This is provided by EO 2020-59, Section 4(c) and Section 10(c).

- EO 2020-59 permits individuals, including Plaintiff Beemer, to engage in outdoor activities that include using boats with motors for fishing and other similar recreational purposes, consistent with remaining at least six feet from people from outside the individual's household.  This is provided by EO 2020-59, Section 7(a)(1).

- EO 2020-59 permits, insofar as is otherwise permissible under the law, the sale of guns from any store via remote order and curbside pick-up, and the sale of guns in-store from stores that sell necessary supplies as well as guns in their normal course of business, subject to the mitigation measures required by Sections 11 and 12 of the order. The order permits individuals, including Plaintiff Muise, to travel to and from such businesses.  This is provided by EO 2020-59, Section 5(c), Section 7(a)(8), Section 10(a), and Section 12(c).

- EO 2020-59 exempts from penalty religious gatherings at private residences.  Accordingly, Plaintiff Muise is not subject to penalty under the order for holding religious gatherings with his immediate family at his private residence located in Superior Township, Michigan.  This is provided by EO 2020-59, Section 16.

55.     The Court signed the stipulated order on April 27, 2020 (Doc. No. 24), and dismissed Plaintiff's motion for a temporary restraining order and preliminary injunction because the immediate relief requested was no longer necessary.

56.     While the stipulation remedied the immediate harm, it does not resolve the critically important constitutional issues presented.  As stated by the U.S. Supreme Court in *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953), the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case," noting

that not only is a defendant "free to return to [her] old ways," but also the public has an interest "in having the legality of the practices settled."

57.     Defendant Whitmer has expressly stated her willingness to "return to her old ways," stating that the State must "be nimble enough to go backward, on occasion."

58.     Additionally, the CDC has predicted a second wave of COVID-19 next winter, coinciding with the annual flu season.

59.     Some experts insist that lockdown restrictions similar to those challenged here should remain in effect until a vaccine is developed, and this could take up to 18 months.

60.     Moreover, each year there is a flu season.  Some years, such as this one, are far worse than others.  Consequently, restrictions like those challenged in this First Amended Complaint will easily and predictably become the "new norm," resulting in the loss of liberty.  The United States and Michigan Constitutions demand more.  The Bill of Rights is a restriction on the power of government; it is not a conferring of rights by the government on the people.  Accordingly, the burden is on the government to justify the restrictions and not on the people to justify their freedom.

61.     The public interest in the legality of the challenged measures of Defendant Whitmer's executive orders was on full display on April 15, 2020, when thousands of Michigan residents and other demonstrators descended upon the State Capitol in Lansing, Michigan in what was called "Operation Gridlock" to publicly protest Defendant Whitmer's restrictions on their liberty.

62.     The United States and Michigan Constitutions place the burden on Defendant Whitmer to set forth specific facts demonstrating a reasonable fit between each challenged measure of her executive orders and a significant, substantial, or important government objective

for imposing them.  And when these restrictions burden fundamental liberties, as set forth in this First Amended Complaint, Defendant Whitmer has the burden to set forth specific facts demonstrating that each challenged measure is necessary to serve a compelling State interest and the restriction is narrowly drawn to achieve that interest.  Defendant Whitmer cannot meet her burden here.

63.     In the final analysis, the challenged measures of Defendant Whitmer's executive orders, as set forth in this First Amended Complaint, lacked any rational basis, were arbitrary, capricious, and vague, had no real or substantial relation to the objectives of the orders, and were beyond all question, a plain, palpable invasion of rights secured by fundamental law. Consequently, it is the duty of this Court to so adjudge, and thereby give effect to the United States and Michigan Constitutions by declaring these measures unlawful and enjoining their future enforcement.

**FIRST CLAIM FOR RELIEF**

**(Equal Protection—Fourteenth Amendment)**

64.     Plaintiffs hereby incorporate by reference all stated paragraphs.

65.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiffs of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

66.     As set forth in this First Amended Complaint, the challenged measures of Defendant Whitmer's executive orders deprive Plaintiffs of their fundamental rights and freedom, yet the orders provide exceptions for other activity and conduct that is similar in its impact and effects.  The challenged measures lack any rational basis, are arbitrary, capricious,

and vague, have no real or substantial relation to the objectives of the orders, and are a palpable invasion of rights secured by fundamental law in violation of the Equal Protection Clause.

67.     When the government treats an individual disparately as compared to similarly situated persons and that disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis, such treatment violates the equal protection guarantee of the Fourteenth Amendment.  As set forth in this First Amended Complaint, the challenged measures of Defendant Whitmer's executive orders violate the equal protection guarantee of the Fourteenth Amendment.

68.     As a direct and proximate result of Defendants' violation of the equal protection guarantee of the Fourteenth Amendment as set forth in this First Amended Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

## SECOND CLAIM FOR RELIEF

### (Due Process—Fourteenth Amendment)

69.     Plaintiffs hereby incorporate by reference all stated paragraphs.

70.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiffs of their right to due process in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

71.     The challenged measures of Defendant Whitmer's executive orders, as set forth in this First Amended Complaint, lack any rational basis, are arbitrary, capricious, and vague, have no real or substantial relation to the objectives of the orders, and are a palpable invasion of rights

secured by fundamental law in violation of the Due Process Clause of the Fourteenth Amendment.

72.     Defendants' actions, as set forth in this First Amended Complaint, deprived Plaintiff Beemer of the use and enjoyment of her property without due process in violation of the Fourteenth Amendment.

73.     The Due Process Clause of the Fourteenth Amendment protects the right to travel locally through public spaces and roadways.  The challenged measures of Defendant Whitmer's executive orders violated Plaintiffs' right to travel.

74.     The challenged measures of Defendant Whitmer's executive orders fail intermediate and strict scrutiny because they broadly prohibited Plaintiffs from traveling through public spaces and roadways to cottages, their families, gun stores, and other locations, and yet the challenged measures permitted other travel with the same impact and effect of Plaintiffs' forbidden travel, in violation of the Fourteenth Amendment.

75.     As a direct and proximate result of Defendants' violation of the Fourteenth Amendment as set forth in this First Amended Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

**THIRD CLAIM FOR RELIEF**

**(Second Amendment & Michigan Constitution Article 1, § 6)**

76.     Plaintiffs hereby incorporate by reference all stated paragraphs.

77.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiff Muise of his rights secured by the Second Amendment as applied to the States and their

political subdivisions under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article 1, § 6 of the Michigan Constitution.

78.     Both the United States Constitution and the Michigan Constitution grant individuals a right to keep and bear arms for self-defense and to ensure the security of a free State.  The Second Amendment of the United States Constitution provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const., Am. II.  Article 1, § 6 of the 1963 Michigan Constitution, which is Michigan's equivalent to the Second Amendment, states, "Every person has a right to keep and bear arms for the defense of himself and the state."  The Second Amendment is fully applicable to the states through the Fourteenth Amendment.

79.     The Second Amendment and Article 1, § 6 guarantee the individual the right to possess and carry weapons in case of confrontation.  At the core of this protection is the right of law-abiding, responsible citizens, such as Plaintiff Muise, to use arms in defense of "hearth and home."  In order for this right to have any meaning and effect, individuals must be permitted to purchase firearms and ammunition and train in the use of firearms within the State.

80.     When a law burdens the fundamental right to bear arms, as in this case, the government bears the burden of justifying the restriction under either intermediate or strict scrutiny.  The challenged measures of Defendant Whitmer's executive orders fail both levels of scrutiny as is evident by the numerous exceptions her executive orders provide for activity that is not protected by the United States or Michigan Constitutions.

81.     As a direct and proximate result of Defendants' violation of the Second Amendment and Article 1, § 6 as set forth in this First Amended Complaint, Plaintiff Muise has

suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief.

## FOURTH CLAIM FOR RELIEF

### (First and Fourteenth Amendments—Right of Association)

82.     Plaintiffs hereby incorporate by reference all stated paragraphs.

83.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiff Muise of his right of association in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

84.     The freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of freedom of speech.  Indeed, implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

85.     Moreover, as recognized by the U.S. Supreme Court, family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.  Consequently, it is relationships such as these that led to an understanding of freedom of association as an intrinsic element of personal liberty under the Fourteenth Amendment.  As set forth in this First Amended Complaint, the challenged measures of Defendant Whitmer's executive orders deprived Plaintiff Muise of his fundamental right of association in violation of the Fourteenth Amendment.

86.     As a direct and proximate result of Defendants' violation of the right to association under the First and Fourteenth Amendments as set forth in this First Amended

Complaint, Plaintiff Muise has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief.

## FIFTH CLAIM FOR RELIEF

### (First Amendment—Free Exercise of Religion)

87.     Plaintiffs hereby incorporate by reference all stated paragraphs.

88.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiff Muise of his right to the free exercise of religion in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

89.     As a direct and proximate result of Defendants' violation of the First Amendment as set forth in this First Amended Complaint, Plaintiff Muise has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A)     to declare that Defendants violated Plaintiffs' fundamental constitutional rights as set forth in this First Amended Complaint;

B)     to enjoin Defendants' enforcement of the challenged measures of Defendant Whitmer's executive orders as set forth in this First Amended Complaint;

C)     to award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

D)     to grant such other and further relief as this Court should find just and proper.

Respectfully submitted,

AMERICAN FREEDOM LAW CENTER

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (P62849)
PO Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901
rmuise@americanfreedomlawcenter.org

/s/ *David Yerushalmi*
David Yerushalmi, Esq. (Ariz. Bar No. 009616;
DC Bar No. 978179; Cal. Bar No. 132011;
NY Bar No. 4632568)
1901 Pennsylvania Avenue NW, Suite 201
Washington, D.C. 20006
Tel: (646) 262-0500; Fax: (801) 760-3901
dyerushalmi@americanfreedomlawcenter.org

*Attorneys for Plaintiffs Beemer and Muise*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Defendant Dana Nessel, the Michigan Attorney General and a new party to this action, has not yet been served pursuant to the Federal Rules of Civil Procedure with a copy of this First Amended Complaint and/or a Summons.

AMERICAN FREEDOM LAW CENTER

/s/ *Robert J. Muise*
Robert J. Muise, Esq.